AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| United States of America | ) |
|---|---|
| v. | ) |
| Maximo Espinosa | ) Case No. |
| | ) |
| | ) |
| | ) 8:24MJ1008AAS |
| Defendant(s) | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __11/9/23, 12/5/23, and 12/7/23__ in the county of __Polk__ in the
__Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C § 846 | Conspiracy to Possess with Intent to Distribute Cocaine; and Possession with Intent to Distribute Fentanyl |

This criminal complaint is based on these facts:
See attached affidavit.

☒ Continued on the attached sheet.

_____, TFO
Complainant's signature

Kristopher Dickinson, TFO DEA
Printed name and title

Sworn to before me and signed in my presence. _Over the telephone consistent with FRCP 4 and 4.1._

Date: __January 3, 2024__

_____
Judge's signature

City and state: __Tampa, FL__

HON. AMANDA ARNOLD SANSONE
Printed name and title

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Kristopher Dickinson, after being duly sworn, depose and say as follows:

## Introduction and Agent Background

1. I am a Task Force Officer with the Drug Enforcement Administration ("DEA") and have been so appointed since 2019. I have been employed by the Winter Haven Police Department since May of 2011. I am presently assigned to the DEA Tampa District Office in the Middle District of Florida. My duties as a Task Force Officer include the investigation of various criminal activities of narcotics traffickers and their associates.

2. This affidavit is being submitted in support of a Criminal Complaint charging Maximo ESPINOSA ("Max") with Conspiracy to Possess and Possession with Intent to Distribute Cocaine and Fentanyl in violation of 21 U.S.C § 846.

3. This affidavit does not contain all of the information pertaining to this investigation, and merely provides probable cause to issue a warrant for the defendant's arrest. I have participated in the investigation described below and I am familiar with the information contained in this affidavit through my personal knowledge and information learned from others during the course of this investigation.

## PROBABLE CAUSE

4. The DEA Tampa District Office, Polk County Sheriff's Office ("PCSO"), and Florida Department of Law Enforcement ("FDLE") have been conducting an investigation into a Drug Trafficking Organization ("DTO") operating in the Middle District of Florida. This investigation identified ESPINOSA and others as distributers of kilogram quantities of cocaine and fentanyl throughout the Middle District of Florida.

### November 9, 2023 – Delivery of One Kilogram of Cocaine

5. On November 9, 2023, a PCSO Undercover Officer ("UC"), was directed to the parking lot of 15 10th Street, Haines City, Florida, (the "Restaurant") by Pedro ROMERO, a co-conspirator. During lawfully recorded conversations, ROMERO and the UC finalized a sale of one kilogram of cocaine for approximately $18,500.00.

6. Upon the UC's arrival at the Restaurant, ROMERO entered the UC's vehicle and advised that another individual, later identified as ESPINOSA, was the supplier of the kilogram of cocaine. ROMERO stated ESPINOSA was sitting in a black Kia Sedan in the adjacent parking lot. Prior to the deal, the UC was outfitted with audio recording devices, which were active for the entirety of this transaction.

7. ROMERO exited the UC's vehicle and entered the front passenger seat of ESPINOSA's vehicle. A short time later, ROMERO exited the vehicle and advised the UC that ESPINOSA was ready to conduct the transaction. The UC

exited his vehicle and entered the front passenger seat of ESPINOSA's vehicle. While in the vehicle, the UC provided ESPINOSA with the $18,500.00 and ESPINOSA provided him with a plastic container that contained a kilogram of cocaine.

8. Following the transaction, ESPINOSA and ROMERO met in front of the Restaurant and walked inside together.

### December 5, 2023, Delivery of sample of fentanyl

9. In December 2023, ESPINOSA was captured on recorded communications organizing a one kilogram of fentanyl transaction with the UC. During these communications, the UC agreed to pay ESPINOSA approximately $37,000 for the kilogram of fentanyl. Prior to the transaction, ESPINOSA and the UC agreed to meet at the Restaurant so ESPINOSA could provide the UC with a sample of the fentanyl.

10. On or about December 5, 2023, ESPINOSA and the UC met at the Restaurant. ESPINOSA arrived at the Restaurant in a silver Kia SUV that belonged to City Kia of Orlando, advising the UC that his Kia sedan was in the shop, and the dealership provided him the SUV while it was being repaired. The UC entered ESPINOSA's vehicle. While in the vehicle, the UC was wearing audio recording devices and captured the entirety of the transaction. During the transaction, ESPINOSA provided a small amount of fentanyl to the UC, telling the UC that he "broke off the brick," referring to the full kilogram of fentanyl.

11. During this transaction, ESPINOSA and the UC discussed a future transaction of approximately six kilograms of cocaine, and two kilograms of fentanyl, which would occur after the sale of one kilogram of fentanyl.

### December 7, 2023, Delivery of one kilogram of fentanyl

12. On or about December 7, 2023, ESPINOSA was again captured on recorded communications with the UC. Specifically, ESPINOSA told the UC he was at the restaurant and prepared to sell the UC the one kilogram of fentanyl for the previously agreed $37,000. Surveillance units observed ESPINOSA standing outside of his black KIA sedan parked on the south side of the Restaurant.

13. At approximately 10:40 a.m., the UC arrived at the Restaurant and contacted ESPINOSA. During the transaction, ESPINOSA provided the UC with an Amazon box that contained a plastic vacuum-sealed bag, which contained approximately one kilogram of powder fentanyl. The UC then provided ESPINOSA with $37,000.00.

14. During this transaction, ESPINOSA and the UC again discussed a future transaction of six kilograms of cocaine, and two kilograms of fentanyl. ESPINOSA advised he did not want to meet at the Restaurant for that transaction, but rather rent an Airbnb to facilitate the large sale.

15. ESPINOSA advised he would need at least a week to secure the two kilograms of fentanyl from his source located in Miami. ESPINOSA then departed the Restaurant, and surveillance was maintained on him until he arrived at 1727

King Phillip Drive, Kissimmee, FL, a residence believed to be occupied by him. The UC was wearing audio recording devices and captured the entirety of this transaction.

16. On December 18, 2023, ROMERO contacted a Polk County Sheriff Office Confidential Source (CS) and asked him/her to vouch for the UC. ROMERO advised the CS that ESPINOSA had contacted him, and asked him to make sure the UC was trustworthy. This was despite ROMERO himself introducing the UC to ESPINOSA personally on November 9, 2023. ROMERO further stated he was aware of the large cocaine and fentanyl transaction set to occur on December 20, 2023, and was calling the CS to ensure the transaction between the UC and ESPINOSA would occur without any issues.

17. During the week of December 18, 2023, the UC and ESPINOSA had multiple recorded phone calls planning the purchase of six kilograms of cocaine and two kilograms of fentanyl. During these conversations, ESPINOSA told the UC he had some of the narcotics but was still waiting for the rest of the narcotics to arrive from his source of supply in south Florida. Because ESPINOSA was still waiting for the rest of the narcotics, the deal was postponed.

### January 2, 2024, Delivery of Approximately 10 Kilograms of Cocaine and 2 Kilograms of Fentanyl

18. On January 2, 2024, ESPINOSA told the UC he had most of the narcotics and the rest was on its way from West Palm Beach. ESPINOSA told the UC to be "ready," because once ESPINOSA had the narcotics he would be ready to

sell them to the UC. The two agreed to meet at the same location as the previous deals, El Azucarero Restaurant at 15 Tenth St. S, Haines City, FL 33844.

19. At approximately 4:30 p.m. surveillance units were set up in the area of the restaurant and observed ESPINOSA near his vehicle.

20. The UC and ESPINOSA spoke on the phone and ESPINOSA told the UC the fentanyl was twenty minutes away and that ROMERO would be bringing it.

21. At approximately 5:37 p.m., the UC called ESPINOSA who again said the fentanyl was twenty minutes away.

22. At approximately 6:37 p.m. ESPINOSA sent the UC a text message stating, "ready". The UC and ESPINOSA spoke on the phone and ESPINOSA directed the UC to where he was in the parking lot. Once the UC arrived at the meet location he got into ESPINOSA's vehicle with ESPINOSA.

23. ESPINOSA and the UC exited the vehicle and ESPINOSA showed the UC the narcotics which were in the trunk of ESPINOSA's vehicle. The UC gave the arrest signal and units moved in to arrest ESPINOSA. Agents located approximately 10 kilograms of cocaine and approximately 2 kilograms of fentanyl in the trunk of ESPINOSA's vehicle. The cocaine and fentanyl field tested positive with their respective field test kits.

## BACKGROUND OF MAXIMO ESPINOSA

24. ESPINOSA was arrested on September 10, 2007, and convicted on August 27, 2009, on two counts of possession with intent to distribute heroin,

possession of a firearm in furtherance of a drug trafficking crime, and convicted person in possession of a firearm. ESPINOSA was sentenced and served 144 months in federal prison.

25. Upon release from federal prison, ESPINOSA was ordered to spend 72 months on Federal Supervised Release, which is set to expire June 18, 2026. ESPINOSA was also convicted of multiple sales and possession with intent to distribute narcotics in the State of New York in the late 1990's, which were investigated by the New York Police Department.

## PARALLEL FBI ORLANDO INVESTIGATION

26. In early September 2023, the Federal Bureau of Investigations (FBI) Orlando Resident Office (ORO), initiated an investigation into ESPINOSA after receiving a tip from an FBI Confidential Source (CS) that ESPINOSA was trafficking narcotics in the Middle District of Florida.

27. In early October 2023, FBI Agents, utilizing an FBI CS, obtained one ounce of cocaine from ESPINOSA during a Buy/Walk operation. ESPINOSA indicated to the FBI CS on multiple occasions he also trafficked fentanyl and provided a small sample of fentanyl powder to him/her.

28. FBI Agents, through their independent investigation, were able to corroborate that ESPINOSA resides at 1727 King Philip Drive, Kissimmee, FL, and had observed him there on multiple surveillance operations.

29. After ESPINOSA's arrest on January 2, 2023, FBI agents executed a search warrant at ESPINOSA's residence at 1727 King Phillip Drive, Kissimmee, Florida. Agents located two firearms, approximately one kilogram of cocaine, approximately half a kilogram of fentanyl, and several hundred pills.

30. Post Miranda, ESPINOSA admitted to being at the meet location to sell cocaine and fentanyl. ESPINOSA said he would be receiving approximately $15,000 to conduct this transaction. ESPINOSA also told agents he had a handgun under the couch at his residence, which was one of the firearms FBI agents located during the search warrant. As discussed above, ESPINOSA is a convicted felon. As such, he does not have the right to own or possess firearms.

## DEA LABORATORY RESULTS

31. On December 13, 2023, SA Satterfield received the completed laboratory report from the DEA Southeast Regional Laboratory (SERL). After testing, it was discovered the net weight from the November 9, 2023 cocaine transaction was 994.6 grams, with a 92% purity of cocaine HCL.

32. On December 14, 2023, SA Satterfield received the completed laboratory report from the DEA Southeast Regional Laboratory (SERL). After testing, it was discovered the net weight from the December 5, 2023 fentanyl sample was 1.0 grams, with a 12% purity of N-Phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]propenamide, otherwise known as fentanyl powder.

33. Based on my training and experience, as well as my knowledge of this investigation, I believe that probable cause exists that ESPINOSA and others conspired to possess and possessed with the intent to distribute cocaine and fentanyl in violation of 21 U.S.C § 846.

Kristopher Dickinson, TFO
Drug Enforcement Administration

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 and 41(d) 41 by telephone on this 3 day of January 2024

AMANDA A. SANSONE
United States Magistrate Judge